## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KHAMCHANH PAKHOTAMA,

      Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,[1]

      Defendant.

No. 10 CV 5379

Magistrate Judge Mary M. Rowland

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Khamchanh Pakhotama filed this action seeking reversal of the final decision of the Commissioner of Social Security (Commissioner) denying his applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (SSA). 42 U.S.C. §§ 416, 423(d), 1381a. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and Plaintiff has filed a motion for summary judgment. For the reasons stated below, the Commissioner's decision is affirmed.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI) under Titles II and XVI of the SSA, a claimant must establish that he or she is

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security and is substituted for her predecessor, Michael J. Astrue, as the proper defendant in this action. Fed. R. Civ. P. 26(d)(1).

disabled within the meaning of the SSA.[2] *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?

2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?

3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?

4. Is the claimant unable to perform his or her former occupation?

5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520, 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 *et seq*. The SSI regulations are virtually identical to the DIB regulations and are set forth at 20 C.F.R. § 416.901 *et seq*.

## II. PROCEDURAL HISTORY

Plaintiff applied for SSI on May 1, 2007, alleging that he became disabled on May 1, 2007, later amended to October 2, 2006, because of lower back injury and right and left hip pain due to necrosis. (R. at 9, 30, 49–50, 60, 108–13, 142). The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 9, 49–55, 64–68). On May 28, 2009, Plaintiff filed for DIB, alleging that he became disabled on October 2, 2006, because of an injury to his left hip. (*Id.* at 9, 132–36). The DIB application was escalated to the hearing level to join Plaintiff's previously filed SSI application. (*Id.* at 9).

On July 16, 2009, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (R. at 9, 24–48). The ALJ also heard testimony from Susan A. Entenberg, a vocational expert (VE). (*Id.* at 9, 24–48, 78, 81, 103).

The ALJ denied Plaintiff's request for benefits on September 21, 2009. (R. at 9–15). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since October 2, 2006, the alleged onset date. (*Id.* at 11). At step two, the ALJ found that Plaintiff has the following medically determinable severe impairments: herniated disc at the lumbar spine, status post lumbar spine surgery, and a history of bilateral necrosis of the hip. (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (*Id.*).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] and determined that he can perform sedentary work with the following additional limitations: "sit-stand option at will; no ladder, rope or scaffold climbing; and only occasional climbing of ramps or stairs, balancing, stooping, crouching, kneeling or crawling." (R. at 12). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff is unable to perform past relevant work as a machine operator, cashier, and packager. (*Id.* at 13). At step five, based on Plaintiff's RFC, his vocational factors, and the VE's testimony, the ALJ determined that there are jobs that exist in significant numbers in the regional economy that Plaintiff can perform, including work as assembler, inspector, and packager. (*Id.* at 14). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the SSA. (*Id.* at 14–15).

The Appeals Council denied Plaintiff's request for review on July 7, 2010. (R. at 1–3). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regula-

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

tions. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young*, 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

## IV. DISCUSSION

### A. The Relevant Medical Evidence

Plaintiff is a 41-year-old man who suffers from a stage IV avascular necrosis of his left hip, along with a post-surgical right hip that had the same condition, and a herniated disc repaired by surgery. (R. at 198–222). The herniated disc was diagnosed and repaired in July 2005, and Plaintiff returned to work in December 2005. (*Id.* at 217–22). In October 2006, Plaintiff was diagnosed with avascular necrosis of both the right (collapsed) and left (collapsing) hips, and received surgery to repair the right hip in December 2006. (*Id.* at 208–09). The right hip surgery was successful and similar treatment of the left hip was recommended at the time. (*Id.* at 207). The left hip remains untreated.

The herniated disc condition resulted from a work incident in June 2005. (R. at 222). Anthony Savino, M.D. began treating Plaintiff in June 2005, when Dr. Savino used MRI, x-ray, EMG, myelogram, and CAT scan tests to diagnose an L4 disc problem. (*Id.* at 219–20). Dr. Savino surgically repaired the herniated disc in August 2005, and Plaintiff was able to return to work in December 2005. (*Id.* at 217–19).

In October 2006, Plaintiff sought treatment from Dr. Savino for another work-related injury resulting in his inability to bend. (R. at 210–15). Dr. Savino diagnosed stage IV collapsed avascular necrosis in the right hip and collapsing avascular necrosis in the left hip. (*Id.* at 209–10). He noted that this was a new development, and that x-rays from a year earlier had not revealed this condition. (*Id.* at 210). Dr. Savino suggested that the hip conditions arose "secondary to either alcohol

or drugs." (*Id.* at 209). Dr. Savino repaired the right hip in December 2006 and noted in a February 2007 post-surgical visit that the right hip was "doing great." (*Id.* at 207). Plaintiff complained of increased pain on his left side and Dr. Savino recommended the same procedure for the left hip. (*Id.*).

Dr. Savino next treated Plaintiff on April 29, 2007, when he admitted him to Sherman Hospital for left hip pain. (R. at 199). Dr. Savino confirmed the avascular hip necrosis diagnosis through examination, CAT scan, and x-ray. (*Id.* at 201–02). He noted that Plaintiff's condition was "much improved" with a course of "systemic analgesic," including Tylenol No. 3, and a recommendation to use a cane or walker. (*Id.* at 199). There is no further record of treatment by Dr. Savino after April 2007.

On August 10, 2007, George Andrews, M.D., a nonexamining, state-agency physician, prepared a physical RFC assessment. (R. at 223–30). After reviewing the medical record, Dr. Andrews concluded that Plaintiff was able to occasionally lift 20 pounds, frequently lift 10 pounds, and stand, walk, and sit for six hours in an eight-hour workday. (*Id.* at 224). Dr. Andrews also noted that "[i]t is expected that within 12 months he will be able to perform within the parameters of this evaluation." (*Id.* at 230). On September 5, 2007, David Mack, M.D. confirmed Dr. Andrews's evaluation. (*Id.* at 231–33).

Plaintiff sought evaluation of his left hip on April 16, 2009, from Nasreen Ansari, M.D. (R. at 253). Dr. Ansari reviewed two x-ray images of Plaintiff's left hip taken on March 24, 2009, and confirmed the diagnosis of avascular necrosis of the fem-

oral head of the left hip. (*Id.* at 253–54). Dr. Ansari indicated surgery for the condition. (*Id.* at 253). No other treatment protocol was noted. (*Id.*).

In his Activities of Daily Living responses completed August 9, 2007, Plaintiff indicated that he has problems such as pain, fatigue, or weakness when he prepares more than a simple meal, picks up a coin, or ties his shoes. (R. at 163). Plaintiff further described an inability to reach overhead, and described pain in his left hip requiring him to use a cane to stand up and walk. (*Id.*). He also listed difficulty getting in and out of a car, negotiating stairs, and toileting. (*Id.* at 164). Plaintiff described alternating between sitting and standing every 30 to 45 minutes, and the ability to do chores like making the bed, doing laundry, and washing the car, though with some discomfort or difficulty bending and standing. (*Id.* at 164–65).

At the hearing, Plaintiff testified that he takes only over-the-counter pain medication for his pain. (R. at 33). He indicated that he has pain from his left hip but not from his right hip. (*Id.* at 34). He further testified that he can lift the weight of a one-gallon milk jug and experiences difficulty navigating stairs, bending, stooping, crouching, crawling, kneeling, and balancing. (*Id.* at 35). He drove himself to the hearing but did not bring a cane to use, which he testified he only requires when he has extreme pain—a nine out of ten. (*Id.* at 36–37). At the hearing, he claimed his pain was seven out of ten. (*Id.*). Plaintiff further testified that he drives only to go to the store but does so two to three times a day. (*Id.* at 38). He is able to shop and carry the grocery bags himself, and he does household chores like washing dishes, cooking, doing laundry, mopping, and sweeping. (*Id.* at 39). Plaintiff alternates fre-

quently between sitting and standing, and elevates his leg every five to ten minutes to alleviate his pain. (*Id.* at 41). He also noted that he cannot walk on uneven ground because of the pain in his left leg. (*Id.* at 44). Plaintiff requires a handrail to navigate stairs. (*Id.* at 45).

## B. Analysis

Plaintiff raises five arguments in support of his request for a reversal: (1) the ALJ's determination at step two was erroneous; (2) the ALJ's determination at step three was erroneous; (3) the ALJ's determination of Plaintiff's credibility was patently wrong; (4) the ALJ's determination of Plaintiff's RFC was erroneous; and (5) the ALJ's determination at step five was erroneous. The Court first addresses Plaintiff's challenges to the ALJ's credibility and RFC determinations, and then the challenges to the ALJ's determinations at steps two, three, and five.

### 1. The ALJ's Credibility Determination

The ALJ determined that the subjective evidence of Plaintiff's pain was not credible in light of the objective medical evidence of his impairments. (R. at 12). Plaintiff challenges this conclusion as groundless boilerplate and contends that the ALJ's did not logically connect specific evidence to her determination. (Mot. 11–12). Plaintiff further asserts that the ALJ erred by using the want of medical treatment on Plaintiff's left hip to impeach his claim of debilitating pain. (Mot. 13). The Commissioner counters that the ALJ did more than quote boilerplate language and provided sufficient reasoning for her determination. (Resp. 10).

In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. §§ 404.1529(c), 416.920(c); Social Security Ruling (SSR) 96-7p.[4] An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 96-7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted); *see* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96-7p.

---

[4] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administering." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted); *see* SSR 96-7p. "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942.

Plaintiff contends that the ALJ used "meaningless boilerplate" language to discredit Plaintiff's statements. (Mot. 11–12). In her decision, the ALJ stated in part:

> After careful consideration of the record, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.

(R. at 12). This is the same language that the Seventh Circuit has repeatedly described as "meaningless boilerplate" because it "yields no clue to what weight the [ALJ] gave the testimony" and fails to link the conclusory statements made with the objective evidence in the record. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). "However, the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination." *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir. 2013). The ALJ did that here.

The ALJ's decision goes beyond the boilerplate language to evaluate evidence of Plaintiff's daily life activities, noting that he "continues to engage in activities such

as walking, driving, shopping and performing household chores. He goes to Temple at times, reads, watches television, and lifts weights while sitting." (R. at 13). These statements allow the Court to sufficiently analyze what the ALJ relied on when she concluded that Plaintiff was not credible. *See Pepper*, 712 F.3d at 368.

After carefully reviewing the record, the Court finds that the ALJ's credibility determination is supported by substantial evidence. *Moss*, 555 F.3d at 561. Plaintiff's statements are internally inconsistent. On the one hand, Plaintiff asserts that he cannot stand or walk without a cane, cannot drive too far, finds it too painful to shop for more than 30 minutes, and cannot sit for more than 10–15 minutes. (R. at 35, 163–64). He also testified that he can stand or walk for only a couple of minutes before needing to rest. (*Id.* at 34). On the other hand, Plaintiff testified that he drives to the store and shops by himself "[t]wo or three times a day." (*Id.* at 38). He acknowledged being capable of pushing the shopping cart and loading and unloading the groceries on his own. (*Id.* at 38–39). He testified that he is able to do dishes, laundry, vacuum, mop, and perform other household chores. (*Id.* at 39). He is able to read, watch television, attend Temple, and lift light weights. (*Id.* at 40–42). Moreover, Plaintiff drove himself to the hearing and negotiated his way from the parking lot to the hearing without a cane.[5] (*Id.* at 37).

Plaintiff also contends that the ALJ held his failure to seek treatment against him in her credibility determination. (Mot. 13). Plaintiff argues that the ALJ ignored his statements at the hearing that he was without funds or insurance to have

---

[5] It appears that Plaintiff drove to and from his home in Elgin to the Social Security Office of Hearings and Appeals in Oak Brook (R. at 4, 24–25), which, according to Google maps, is a distance of 29 miles and takes at least 40 minutes, depending on traffic.

the surgery. (*Id.*). The Court is not persuaded. The ALJ observed that Dr. Savino recommended a left total hip replacement and that Plaintiff's hip remains untreated. (R. at 13). But the ALJ did not use Plaintiff's lack of left hip surgery to discredit his testimony. Instead, as discussed above, the ALJ properly rejected Plaintiff's credibility because his allegations of total disability were in direct conflict with his daily activities.

The Court is mindful that the Seventh Circuit has repeatedly cautioned against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home. *Mendez v. Barnhart,* 439 F.3d 360, 362–63 (7th Cir. 2006) ("The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work."). Thus, while it is proper for an ALJ to consider daily activities, the ALJ "must explain perceived inconsistencies between a claimant's activities and the medical evidence." *Jelinek v. Astrue,* 662 F.3d 805, 812 (7th Cir. 2011). And here, it is not the ability to perform certain household activities that undermines Plaintiff's credibility; instead, Plaintiff's testimony that he can walk, drive, shop, and perform household chores undermines his statements that he cannot stand or walk without a cane, cannot drive too far, finds it too painful to shop for more than 30 minutes, and cannot sit for more than 10–15 minutes.

In sum, the Court finds no errors in the ALJ's credibility determination. The finding was supported by substantial evidence and was specific enough for the

Court to understand the ALJ's reasoning. *See Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

### 2. The ALJ's Determination of Plaintiff's RFC

The ALJ determined that Plaintiff has a herniated disc at the lumbar spine and a history of bilateral avascular necrosis of the hip, which cumulatively result in functional limitations. (R. at 11, 12). After examining the medical evidence and giving partial credibility to some of Plaintiff's subjective complaints, the ALJ found that Plaintiff has the RFC to perform sedentary work with certain limitations, including sit-stand at will, no ladder or scaffold climbing, and only occasional balancing, crouching, or stair climbing. (*Id.* at 12). Plaintiff argues that the ALJ erred in this determination by ignoring significant evidence contrary to her conclusion, holding the failure to treat the left hip necrosis against Plaintiff, and not giving Dr. Ansari's evaluation sufficient weight.[6] (Mot. 12–13). In particular, Plaintiff asserts that the ALJ ignored medical reports explaining both his pain and the source of his pain. (*Id.* 13).

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; see 20 C.F.R. §§ 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."), 416.945(a)(1) (same); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable

---

[6] Plaintiff refers to Dr. White's evaluation of the patient on March 24, 2009 (Mot. 6, 9). This evaluation is the x-ray examination of Plaintiff's hip (R. at 254), which forms the basis for Dr. Ansari's April 16, 2009 evaluation (*id.* at 253). The Court treats these two documents as evidence related to one physician visit.

impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft*, 539 F.3d at 676. In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; see 20 C.F.R. §§ 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."), 416.945.(a)(1) (same); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

By rule, "in determining whether a claimant is entitled to Social Security disability benefits, special weight is accorded opinions of the claimant's treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physician. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v.*

*Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). Therefore, an ALJ "must offer 'good reasons' for discounting a treating physician's opinion," *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir 2010) (citing 20 C.F.R. § 404.1527(d)(2); other citation omitted), and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice," *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). That said, the rationale for the weight given to a treating physician's opinion rests on the "length, nature, and extent of the treatment relationship, frequency of examination" and other indicators. *Moss*, 555 F.3d at 561; *see* 20 C.F.R. §§ 404.1527, 416.927.

After carefully examining the record, the Court finds that the ALJ's determination of Plaintiff's RFC was fully grounded in the medical evidence, including physicians' opinions and Plaintiff's testimony. Her decision references specific objective medical evidence of Plaintiff's post-surgical herniated disk, post-surgical avascular necrosis of his right hip, and untreated avascular necrosis of his left hip. (R. at 12). While Plaintiff cites to two medical notes that the ALJ did not explicitly mention (*id.* at 207, 248), the ALJ is not required to discuss every piece of evidence, *Knox v. Astrue*, 327 F. App'x 652, 657–58 (7th Cir. 2009) ("The ALJ need not provide a written evaluation of every piece of evidence, but need only minimally articulate his reasoning so as to connect the evidence to his conclusions."). Moreover, Plaintiff does not explain how this "missing" evidence conflicts with the ALJ's RFC determi-

nation. *Knox*, 327 F. App'x at 657 ("[Claimant] does not draw our attention to any evidence that conflicts with the ALJ's conclusion.").

Dr. Ansari's April 16, 2009 evaluation (R. at 253) provides the objective evidence most supportive to Plaintiff's claim that pain from his disability precludes his ability to do any work, and the ALJ devoted significant attention in her decision to this evidence (*id*. at 13). She credited it as objective evidence, but did not accord it controlling weight because Dr. Ansari had seen Plaintiff only once and therefore was not considered a treating physician. (*Id*.); *see Moss*, 555 F.3d at 561; 20 C.F.R. §§ 404.1527, 416.927. The ALJ further explained that she did not give any weight to Dr. Ansari's statement that Plaintiff was incapable of any work, because that was a vocational opinion outside the scope of the physician's expertise. (R. at 13). The RFC determination and the hypothetical posed to the VE further reflect the objective evidence from Dr. Ansari's examination: for instance, the modifications to the sedentary work requirement specified the need to alternate between sitting and standing. (*Id*. at 12). And the RFC incorporated Dr. Ansari's determination that Plaintiff cannot walk long distances, and sometimes not even short distances, without pain. (*Compare id. with id.* at 253).

The ALJ's RFC determination also takes into account those portions of Plaintiff's testimony found credible. As discussed above, Plaintiff acknowledged that he was able to ambulate effectively without using a cane or walker. Plaintiff testified that he was able "to engage in activities such as walking, driving, shopping, and performing household chores." (R. at 13; *see id*. at 38–42). He drove to the hearing and

did not bring his cane. (*Id.* at 37). Nevertheless, the ALJ added specific limitations to the RFC (*id.* at 12), which reflect Plaintiff's testimony that he must alternate between standing and sitting, and has difficulty climbing stairs (*id.* at 35) ("Q: How long can you sit? A: About ten/fifteen minutes, then I have to get up again because the backs of my leg;" "Q: But do you have difficulty climbing stairs? A: Yes"). And the ALJ confirmed that Plaintiff's expressed need to elevate his legs periodically was not in conflict with the RFC. (*Id.* at 13; *see id.* at 47).

The Court finds that the ALJ did not err in her determination of Plaintiff's RFC. She fully employed the evidence and Plaintiff's testimony to arrive at the maximum that Plaintiff can still do despite his physical limitations.[7] *Craft*, 539 F.3d at 675–76.

### 3. The ALJ's Step-Three Determination

Plaintiff challenges the validity of the ALJ's determination at step three because it lacked specificity and ignored substantial evidence contradicting her finding. (Mot. 8–11). Plaintiff asserts that he meets the criteria for at least two of the listed impairments, and claims the ALJ's conclusion that he regained ambulatory ability is not supported in the record.[8] (*Id.* 9).

---

[7] Plaintiff contends that the ALJ's step-five determination was faulty. (Mot. 13–14). Plaintiff argues that "[t]he ALJ's hypothetical question [to the VE] was flawed by the omission of the full range of symptoms and limitations imposed by the medical record and Plaintiff's own testimony." (*Id.* 14). This contention merely regurgitates Plaintiff's credibility and RFC arguments, which the Court has addressed. As discussed above, the ALJ fully employed the appropriate medical evidence and Plaintiff's credible testimony in formulating Plaintiff's RFC. In posing hypothetical questions to the VE, the ALJ included all these credible limitations.

[8] Plaintiff also argues that the ALJ's step-two analysis was deficient. (Mot. 6–8). Plaintiff contends that "the ALJ did not undertake a functional assessment of Plaintiff's combi-

Although the ALJ provides the step-three analysis, "a claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing." *Knox*, 327 F. App'x at 655; *see Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (The claimant "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing."). Furthermore, the ALJ need not explicitly refer to each listing as long as it is clear from the decision that she considered each listing raised by the claimant. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004).

In *Rice*, the court found that substantial evidence supported the ALJ's step-three determination that the claimant did not meet any listing criteria. 384 F.3d at 369–70. Even though there was a "plethora of subjective and objective conditions" in the record, including reference to muscle spasms, a required criterion, the court reasoned that the evidence was nonetheless insufficient to meet *all* the criteria of the listing. *Id.* at 369 (emphasis added). The court also held that it would not reverse an ALJ determination merely because the ALJ did not explicitly reference a specific listing. *Id.* at 369–70.

---

nation of impairments at Step Two, in violations of the Commissioner's Rulings." (*Id.* 8) (citations omitted). But a finding at step two of at least one severe medical condition "is merely a threshold requirement." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). And upon finding one severe condition, the ALJ must "consider the aggregate effect of this entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). Thus, the ALJ's failure to identify more than one severe impairment at step two does not constitute reversible error. *See, e.g.*, *Cole v. Astrue*, No. 09 C 2895, 2011 WL 3468822, at *5–6 (N.D. Ill. Aug. 8, 2011); *Boucek v. Astrue*, No. 08 C 5152, 2010 WL 2491362, at *14–15 (N.D. Ill. June 16, 2010) ("where ALJ finds claimant suffers from severe impairments, failure to find other condition constituted a severe impairment could not constitute reversible error") (citation omitted).

By contrast, in *Steele*, the court reversed a step-three determination because the ALJ failed to refer to evidence supporting her determination that the claimant did not meet the criteria for a listed impairment. 290 F.3d at 941. The *Steele* court did not base its reversal on the grounds that the ALJ omitted a key listing and conducted only a perfunctory analysis. *Id.* at 940. Instead, the court found sufficient evidence in the record to support a determination contrary to the ALJ's and remanded the case for a determination grounded in the record. *Id.* at 941.

Following *Steele*, the Seventh Circuit remanded a case for the ALJ's failure at step three to provide "any analysis that would enable meaningful review," coupled with the failure to refer to any specific listing. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003). In *Brindisi*, the claimant provided three listings, yet the ALJ addressed none of them, despite substantial evidence related to these listings. *Id.* ("Here the ALJ should have discussed not only the results of the December 1995 audiogram, but also whether those results meet the requirements of listing 102.08."). As in *Steele*, the *Brindisi* court found sufficient evidence in the record to support a determination different than the ALJ's; therefore, it remanded for a clearer justification of the step-three determination. *Id.* at 787.

Here, unlike in *Steele* and *Brindisi*, the medical evidence supports the ALJ's determination. Prior to the July 2009 hearing, Plaintiff provided the ALJ with a detailed explanation of the objective evidence supporting his claim that he met or equaled Listings 1.02A, 1.03, and 1.06. (R. 189–92), see 20 C.F.R. §§ 404.1520(d), 416.920(d), pt. 404, subpt. P, app. 1. And while the ALJ did not address these claims

specifically at the hearing or mention them in her determination at step three, it does not necessarily follow that she failed to analyze the evidence in light of these Listings. The ALJ explained in her step-three determination that Plaintiff "regained good ambulatory ability within twelve months, and there is no evidence of abnormal strength, sensation or reflexes." (R. at 11). The ALJ stated that she relied on the opinions of the state agency medical consultants who evaluated the issue at the initial and reconsideration levels. (*Id.*). Indeed, the ALJ referred to Dr. Andrews's evaluative comments expecting that "within 12 months [Plaintiff] will be able to perform within the parameters of this evaluation." (*Id.*).

The ALJ could have provided more transparent reasoning. Nevertheless, the record supports the ALJ's finding. Plaintiff contends that he meets the qualifications for Listings 1.02 and 1.03 (Mot. 10–11), and both of these Listings require the "inability to ambulate effectively," 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(B)(2)(a). The regulations define "inability to ambulate effectively" as "having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* § 1.00(B)(2)(b) (citation omitted). When Plaintiff appeared at his hearing on July 16, 2009, without his cane and explained that he only used a cane when he experienced extreme pain (R. at 35–37), he effectively demonstrated to the ALJ that he does not meet an essential criterion for Listings 1.02 and 1.03. Moreover, Plaintiff acknowledged that he drives to the store and shops by himself "[t]wo or three times

a day." (*Id.* at 38). He testified that he is able to do dishes, laundry, vacuum, mop, and perform other household chores.[9] (*Id.* at 39).

The reasoning of the *Rice* court controls here, and the Court will not remand the ALJ's determination at step three for failing to specify a listing when the record plainly demonstrates that Plaintiff does not meet all the criteria of the Listings he raises.

## C. Summary

In sum, the ALJ has built an accurate and logical bridge from the evidence to her conclusion. The ALJ's credibility, RFC, step two, step three, and step five determinations are all supported by substantial evidence.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Reverse the Final Decision of the Commissioner of Social Security [30] is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision is affirmed.

E N T E R:

Dated: May 16, 2013

_____
MARY M. ROWLAND
United States Magistrate Judge

---

[9] While Plaintiff does not raise the issue of Listing 1.06 on appeal, that condition also requires the "inability to ambulate effectively." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.06(B). Therefore, Plaintiff also fails to meet the requirement for Listing 1.06.